UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-12361-NMG

JOHN NEVULIS
     Plaintiff,

v.

CITY OF BOSTON,
     Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT CITY OF BOSTON'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

**I.   INTRODUCTION**

Plaintiff, John Nevulis, sues the City of Boston for negligence in its failure to install a curb ramp at the corner intersection of Telegraph and Dorchester Streets in South Boston, Massachusetts.  In his two-count Complaint, Plaintiff contends that on October 12, 2001, he "fell from his wheelchair and suffered serious injuries" due to the absence of a curb ramp.  (Pl.'s Complaint, ¶ 3).  Plaintiff further alleges that the City "knew or should have known that curb ramps at nearby corners would lead a reasonable and prudent handicapped person to believe that a curb ramp existed at the sidewalk corner where the plaintiff fell and suffered injury."  (Pl.'s Complaint, ¶ 4).

1

In Count I of his Complaint, Plaintiff characterizes the absence of a curb ramp at the corner of Telegraph and Dorchester Streets as a defect in the public way, and he sues the City pursuant to M.G.L. ch. 84, § 15.  In Count II of Plaintiff's Complaint, he alleges that the City's failure to construct a curb ramp at the relevant corner constitutes a violation of Title II of the Americans With Disabilities Act (ADA). Plaintiff's Complaint does not seek injunctive or equitable remedies; rather, he seeks monetary damages "in an amount to be determined at trial."

The City seeks dismissal of Plaintiff's Complaint, which alleges that the City violated Title II of the ADA, and that the City acted negligentlybecause:

1. Plaintiff fails to plead the necessary facts to state a
   claim under Title II of the ADA against the City in Count
   II;

2. Count II of Plaintiff's action is time-barred by the
   applicable statute of limitations for Title II of the ADA
   actions; and,

3. Plaintiff fails to state a claim upon which relief may be
   granted under M.G.L. ch. 84  against the City in Count I.

## II.  APPLICABLE STANDARD

A motion to dismiss is to be allowed when a Plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246 (1980); Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998); Williams v. Astra USA, Inc., 68 F. Supp. 2d 29 (D. Mass. 1999). In considering a motion to dismiss, the Court is obliged to accept a Plaintiff's well-pleaded facts as they appear, granting every reasonable inference in Plaintiff's favor.  Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  This indulgence, however, does not require the Court to credit bald assertions, unsubstantiated conclusions or outright vituperation.  Correa-Martinez v. Arrillaya-Belendez, 903 F.2d 49, 52 (1st Cir. 1990).  Here, Plaintiff fails to meet the applicable standard; accordingly, his Complaint should be dismissed.

## III.  PLAINTIFF CANNOT ESTABLISH A VIOLATION OF TITLE II OF THE ADA.

### A.  TITLE II BACKGROUND

Plaintiff contends that the City's failure to install a single curb ramp at Telegraph and Dorchester Streets -- an "existing facility" -- rises to the level of an ADA

violation.  Title II of the ADA distinguishes between
existing facilities as facilities that were constructed
prior to the passage of the ADA in 1992, as opposed to new
construction or alterations.  Here, Plaintiff does not
allege the relevant sidewalk is "new construction" under the
ADA, and therefore, this motion infers that Plaintiff
contends the relevant sidewalk intersection is an existing
facility for ADA purposes.  Accordingly, Plaintiff's reading
of the mandates of the ADA is mistaken.  Neither the
language of the statute nor the relevant case law support
the notion that the absence of a single curb ramp at an
existing sidewalk intersection constitutes a violation of
Title II of the Act.  In fact, the ADA does not require
public entities, such as the City, to install curb ramps at
every single sidewalk corner.  Rather, Title II provides in
pertinent part:

> [N]o qualified individual with a disability shall,
> by reason of such disability, **be excluded from
> participation in or be denied the benefits of the
> services, programs, or activities of a public
> entity**, or be subjected to discrimination by any
> such entity.

42 U.S.C. § 12132 (emphasis added).

Under the plain language of the statute, therefore, to
prove a Title II violation a Plaintiff must establish: (1)
that he is a qualified individual with a disability; (2)

4

that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  See e.g., Parker v. Universidad de Puerto Rico, et al., 225 F.3d 1, 5 (1st Cir. 2000).

Plaintiff's Complaint fails to meet any of these three requirements, and should be dismissed accordingly.  First, Plaintiff does not plead he is disabled.  He merely states he was in a wheelchair at the time he fell at the intersection of Telegraph and Dorchester Streets.  Second, as explained below, the City's sidewalks are not a "service, program, or activity" for ADA purposes, but rather a facility.  Further, Plaintiff has failed to allege any denial of access or denial of a benefit.  Finally, also further described below, the absence of a single curb ramp alone does not equal discrimination.

### B. THE ADA ONLY REQUIRES THE INSTILLATION OF CURB RAMPS WHEN THERE IS AN ALTERATION

Title II of the ADA does not contemplate that sidewalks are a "program, service or activity", rather the statute's regulations consider sidewalks as a facility.  Further, as the regulations make clear, the regulations provide significantly

different legal requirements for municipalities depending on whether the facility in question is an existing facility as opposed to a newly constructed facility.  The corner intersection of Telegraph and Dorchester Streets is an existing facility for the purposes of this motion, as Plaintiff does not contend otherwise.

Title II of the ADA does not require municipalities to install curb ramps at existing corners of every sidewalk intersection within a City.  The ADA instructs the United States Attorney General to promulgate regulations to implement Title II.  Said regulations are codified in Title 28, Chapter 35 of the Code of Federal Regulations (CFR).  As noted above, the applicable regulations establish significantly different rules for existing facilities, i.e., facilities that were constructed prior to the passage of the ADA in 1992, as opposed to new construction or alterations.  For example, Section 35.151 covers newly-constructed or altered facilities and requires that new construction and alterations commenced after January 26, 1992, be conducted so that the new facility or part of the facility, is readily accessible to and usable by individuals with disabilities.

Existing facilities, by contrast, are not subject to the rigorous accessibility regulations above.  Instead, Section 35.150, which covers existing facilities, explicitly provides

that public entities do not have to make each existing facility accessible to and usable by individuals with disabilities.  § 35.150(a)(1).  Further, Section 35.150 establishes that "[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."

Accordingly, Title II's implementing regulations do not require public entities to retrofit existing facilities immediately.  "Rather, a flexible concept of accessibility is employed, and entities are generally excused from making fundamental alterations to existing programs and bearing undue financial burdens."  Kinney v. Yerusalim, 9 F.3d 1067, 1071 (3rd Cir. 1993).  Therefore, the regulations for existing facilities are flexible and review public entities' compliance "when viewed in their entirety," but the standard for new or altered streets is more stringent.  The legal import of the different standards for existing facilities and new construction or alterations was at issue in Yerusalim supra, where the Third Circuit held that resurfacing Philadelphia's streets constituted an "alteration" for ADA purposes, and therefore the City was enjoined to install curb ramps where it was resurfacing.  Id., at 1073-74.[1]  Though

---

[1] The Yerusalim Court's analysis of whether resurfacing of roadways constituted "new construction" or an "alteration" for Title II purposes illustrates the

Yerusalim found resurfaced roads were "altered" facilities, in so holding the Court noted the logic behind establishing different regulations for existing facilities, because the modification of all existing facilities could impose "extraordinary costs."  Id. at 1074.[2]  By the plain language of Title II of the ADA and its regulations, therefore, Title II does not require the City to make every existing sidewalk corner and intersection accessible.

### C. CITY SIDEWALKS ARE NOT A SERVICE, PROGRAM OR ACTIVITY UNDER THE ADA.

A plaintiff must prove the denial of access to a public entity's program, service or activity, to establish violation of Title II the ADA.  Here, Plaintiff cannot prove he was denied access to a program by virtue of the absence of a curb ramp at the corner of Telegraph and Dorchester Streets.  And the alleged single missing curb ramp does not equate to denial of access to the City of Boston's "services, programs or activities" within the meaning of Title II of the ADA.  In fact, Plaintiff's Complaint is silent as to any facts or allegations that he has been denied access to a City service, program or activity due to

---

legal significance of whether an existing facility or an alteration is under review.  If it were true, as the Plaintiff appears to imply, that municipalities must install curb ramps at every "existing facility" corner in their jurisdiction, the Yerusalim case would have been a non-issue.
[2] The instant complaint does not allege the relevant location has been resurfaced and therefore is an alteration for Title II purposes; therefore, this motion strictly addresses whether the ADA requires Cities to retrofit existing facilities.

the absence of a single curb ramp.  Though the First Circuit has

not reached the question whether existing sidewalks in the

public rights-of-way are facilities rather than services,

programs, or activities under the ADA, a close reading of the

Act, supporting regulations and other Circuit's case law leaves

no doubt that City sidewalks are considered facilities for the

purposes of the Act.  Otherwise, the Third and Sixth Circuits

would not have labored to distinguish between an existing

facility versus new construction or alterations, and these cases

would have been nonstarters.  See Yerusalim, supra; see also,

Ability Center of Greater Toledo v. Sandusky, 133 F.Supp. 2d 589

(N.D. Ohio 2001)(analyzing whether the failure to install ADA

compliant curb ramps when the city resurfaced or reconstructed

streets constituted an ADA violation (upheld in Ability Center

of Greater Toledo v. Sandusky, 2004 U.S. App. LEXIS 20680 (6th

Cir. 2004)); see also Deck v. City of Toledo, 76 F.Supp. 2d 816

(N.D. Ohio 1999)).

     Moreover, this case does not concern the type of program

access problems that Title II was created to remedy.  See e.g.,

Tennessee v. Lane, 158 L.Ed. 2d 820, 838-844, 124 S.Ct. 1978,

1989-94  (2004), (finding that physical barriers in courthouses

and courtrooms deny disabled persons access to due process in

violation of Title II); Parker v. Universidad de Puerto Rico,

225 F.3d 1, 5 (1st Cir. 2000) (noting if Plaintiff could prove

that no safe path existed to access the University's botanical garden a Title II violation existed). Thus, Plaintiff does not allege he was denied access to a City of Boston program, service or activity -- that he could not enjoy particular City program-- and hence, his ADA count should be dismissed.

Though the Ninth Circuit has held that public sidewalks are a program under Title II of the ADA, in Barden v. Sacramento, 292 F.3d 1073, 1078 (9th Cir. 2002) This Court is not bound by the decision.  In Barden the Court remanded the case to district court for further proceedings and noted that the City would have the opportunity to present evidence concerning any undue financial and administrative burdens.  However, this Court should not follow the Ninth Circuit's misreading of the statutory requirements of Cities under the ADA.  The better law, as applied in Yerusalim, supra, Ability Center of Greater Toledo, supra, and Deck supra, deems sidewalks as facilities as is contemplated by Title II's regulations, and then the courts further analyze the facilities' compliance with the ADA depending on whether the facility in question existed prior to the enactment of the ADA or is new construction.

The Barden Court failed to address the fact that the DOJ expressly establishes different requirements for existing facilities and new construction or altered facilities.  Thus, the Barden Court did not account for the distinct regulatory

10

differences for existing versus newly constructed facilities.

Also the Barden Court erroneously conflates the terms

"facilities" and "programs" and "activities."  However, these

terms are not interchangeable under the ADA, and to hold

otherwise would drastically change the meaning and scope of

Section 35.150(d), and improperly require public entities to

make existing non-program structures accessible, notwithstanding

the clear language limiting public entities' requirements to

"physical obstacles in the public entity's facilities that limit

the accessibility of its programs or activities to individuals

with disabilities."  § 35.150(d)(3)(i).  Therefore, this Court

should not follow Barden's misdirection, as the ADA contemplates

sidewalks as facilities not a program, service or activity.

### D. EVEN IF THE CITY SIDEWALKS ARE DEEMED A PROGRAM, SERVICE OR ACTIVITY, PLAINTIFF FAILS TO STATE A CLAIM.

To the extent the public way in question could be deemed a

"program, service or activity," nonetheless strict compliance is

not required under the ADA for existing facilities like the

corner sidewalk of Telegraph and Dorchester Streets.  The City

is only required to make a, program, service or activity "when

viewed in its entirety," readily accessible to and usable by

individuals with disabilities. 28 C.F.R. § 35.150(a).  Further,

public entities are excused from the obligations if compliance

would result in "fundamental alteration" or an "undue burden" 28

C.F.R. § 35.150(a).  When viewed in their entirety, the City's

sidewalks are accessible.  Plaintiff practically admits as much

in his Complaint, when he asserts that it was because there were

curb ramps at other intersections he assumed there would be a

curb ramp at Telegraph and Dorchester Streets.

This case is distinguishable from the First Circuit

decision in Parker supra, where plaintiff, a wheelchair user,

sued the University of Puerto Rico for injuries he suffered when

his wheelchair overturned along a path to the school's Botanical

Gardens.  The Appeals Court vacated and remanded the case after

reviewing the district court's judgment as a matter of law on

the grounds that Plaintiff had made out a prima facie case under

the ADA, and yet there were several defenses untested.  The

Parker case sheds some light on what constitutes a Title II

"program" or "service" under the Act.[3]  Further, in Parker,

plaintiff and his family had been directed to the path where

plaintiff injured himself by a security guard, and was unable to

safely access the Garden, which the court deemed a program for

ADA purposes.  "Although **the University is not required to make

every passageway in and out of the Monet Garden accessible**, it

---

[3] As the Parker Court noted, "[a]lthough Title II of the ADA took effect on
January 26, 1992, there is sparse caselaw interpreting its scope and limits."
Parker, at 4.  Four years after the First Circuit visited the issues, the
available caselaw remains meager.

must provide at least one route that a person in a wheelchair can use to reach the Monet Garden safely, absent a defense that excuses such performance." Id. at 7(emphasis added).  The Parker Court further noted that liability under Title II is a discriminatory denial of access, not negligence, and therefore the University could have offered many defenses to rebut plaintiff's case including, that there was another path to the Monet Garden that was safe for use.  Id. at 19.[4]  Thus, it appears the Parker Court would find an ADA violation only if there was no safe access to the public program: the Garden.

In this case, however, Plaintiff has not alleged that he was unable to access a Boston program.  Rather, he focuses on one single existing sidewalk intersection.  However, as the Parker court explained, the City "is not required to make every passageway" accessible.  Moreover, unlike the plaintiff in Parker who was attempting to access a public entity's specific program -- the Monet Gardens -- here, Plaintiff does not contend he was unable to reach a public program, (and, as argued above, the sidewalks themselves do not constitute a program).  This distinction is important, and goes to the heart of the ADA's mission.  As the First Circuit explained in Parker:

---

[4] The Court also provided the University could rebut Plaintiff's evidence with the defenses that disabled persons were not denied access to the Monet Garden, that the path at issue was safe, that providing wheelchair access would require a "fundamental alteration" or "undue burden."  Parker, at 20.

[A] public entity is not required to make structural
changes in existing facilities where other methods are
effective in achieving compliance.  [28 C.F.R. § 36.304]
§ 35.150(b)(1). If one facility is inaccessible, for
example, a public entity can achieve compliance with the
ADA by moving its services, programs, or activities to
another facility that is accessible.  See United States
Dep't of Justice, The Americans with Disabilities Act:
Title II Technical Assistance Manual 10, 19 (1992). Title
II's emphasis on program accessibility rather than
facilities accessibility was intended to ensure broad
access to public services, while, at the same time,
providing public entities with the flexibility to choose
how best to make access available.  See Accessibility
Under the ADA, at 53-54; 28 C.F.R. Part 35, App. A §
35.150 (stating that under Title II, the concept of
program access will continue to apply with respect to
facilities now in existence, because the cost of
retrofitting existing facilities is often prohibitive.

Parker, at 14 (internal quotations excluded).  This lengthy

passage lays to rest Plaintiff's contention that a single

missing curb ramp at an existing sidewalk corner could rise to

an ADA violation.

### E. PLAINTIFF CANNOT SHOW DISCRIMINATION.

As noted above, to succeed on his claim under Title II,

Plaintiff must establish, "(1) that he is a qualified individual

with a disability; (2) that he was either excluded from

participation in or denied the benefits of some public entity's

services, programs, or activities or was otherwise discriminated

against; and (3) that such exclusion, denial of benefits, or

discrimination was by reason of [his] disability."  Parker,

supra, at 5.  Here, Plaintiff does not plead any facts

14

supporting a discrimination claim under the ADA.  Rather, his

Complaint focuses on the City's alleged negligence.

Absent from the Complaint are any facts suggesting the City

intentionally discriminated against Plaintiff, and therefore, he

fails to plead the required violation under Title II of the Act.

For example, in Schonfeld v. City of Carlsbad, 978 F. Supp. 1329

(S.D. Cal. 1997), the district court granted the City's motion

for summary judgment, on the grounds that "plaintiffs'

identification that curb ramps are missing from certain

intersections, without more, does not raise a material issue of

fact demonstrating that plaintiffs were discriminated against".[5]

Moreover, in Reise, v. A.T. Wall, 2004 U.S. Dist. LEXIS 20227,

*7 (D. R. I. 2004), the district court granted Defendant's

motion to dismiss a Title II claim on the grounds plaintiff had

not alleged discrimination based on his disability.  The Reise

Court explained, "[I]ndeed, nowhere in Plaintiff's Complaint

does he complain of discrimination".  Likewise, here, there are

---

[5] Further, without evidence of intentional discrimination Plaintiff cannot
recover compensatory damages under Title II of the ADA. See Romeika v. Oxford
County Sheriff's Dep't., 2003 U.S. Dist. LEXIS 14882, *12-14 (D. Me.
2003)(granting Defendant's summary judgment motion as to plaintiff's
discrimination counts under Title II of the ADA because there was no evidence
of intentional discrimination and therefore no compensatory relief was
available).  See also, Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th
Cir. 1998) ("in the absence of proof of discriminatory animus, compensatory
relief should not be allowed"); Matthews v. Jefferson, 29 F.Supp. 2d 525, 536
(W.D. Ark.1998)(holding that to recover compensatory damages, plaintiff must
prove discriminatory intent).
    It is also well-settled law that punitive damages are not available
under Title II.  Barnes v. Gorman, 536 U.S. 181, 186-187 (2002).
Accordingly, even if the Court denies the City's instant motion, it is highly
unlikely Plaintiff will obtain monetary relief as requested even if
successful at trial.

no allegations anywhere in Plaintiff's Complaint that the City's

failure to install a single curb ramp at the corner of Telegraph

and Dorchester Streets was discriminatory or that the alleged

failure was based on Plaintiff's alleged disability.  In sum,

Plaintiff's complaint fails to state a claim upon which relief

may be granted and should be dismissed accordingly.

### IV.   COUNT II OF PLAINTIFF'S COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS.

Even if this court were to find that Plaintiff has pled

sufficient facts to survive dismissal as to Count II, Count II

is still precluded by the statute of limitations.  ADA claims

are subject to the three-years statute of limitations in the

Commonwealth.  See e.g., Downs v. Mass. Bay Transp. Author., 13

F. Supp. 2d 130, 136 (D.Mass. 1998); Mitchell v. Maloney, 2002

U.S. Dist. LEXIS 25019, *8 (D.Mass. 2002).  Here, Plaintiff

filed the instant complaint on October 8, 2004.   However, to

the extent the absence of a curb ramp at an existing facility is

actionable, the violation occurred as of July 26, 1992.  This is

because under 28 C.F.R. § 35.150(d)(1), public entities employing

at least 50 persons were directed by the DOJ regulations to

adopt a transition plan by July 26, 1992.  The transition plan

pertains to the public entity's plans for structural changes at

existing facilities.  It follows that the sidewalk curb at

16

Telegraph and Dorchester Street, as an existing facility, would be covered by the transition plan.

Accordingly, Plaintiff knew or should have known of the City's compliance with the ADA as to the self-evaluation and transition plan prior to July 26, 1992. This means that three years after that date--as of July 26, 1995-- his allegations against the City as to its violations of the ADA due to its noncompliance with the self-evaluation and transition plan regulations were time-barred.  Moreover, as stated above, this case involves a sidewalk corner in existence prior to the passage of the ADA in 1992.

To the extent Plaintiff argues the City's alleged failure to comply with the ADA constitutes a continuing violation, he is wrong.  Here, Plaintiff has not plead any facts which show the City has engaged in ongoing, continuous discriminatory acts as is required to trigger the continuing violations theory.  As the Supreme Court explained in Havnes Realty Corp. v. Coleman, 455 U.S. 363, 380, 102 S.Ct. 1114, 1125 (1982), discriminatory incidents which occur after the limitations period are actionable, "where a plaintiff . . . challenges not just one incident of [unlawful conduct] . . . but an unlawful practice that continues into the limitations period, [in such cases] the complaint is timely when it is filed within [the statute of limitations period] of the last occurrence of that practice."

Id.  However in this case, the Complaint makes no allegations as to new construction or recent violations, which might otherwise bring Plaintiff's time-barred Complaint under the protection of continuing violations. For these reasons, Count II of the Complaint must be dismissed as time-barred as of July 26, 1995

**V.   COUNT I OF PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER M.G.L. CH. 84, § 15**

Count I, alleging negligence against the City under Massachusetts General Law Chapter 84 also fails to state a claim and should be dismissed.  Count I of Plaintiff's Complaint asserts that the City's failure to construct a curb ramp renders the City liable for maintaining a defect in the public way pursuant to M.G.L. ch. 84, § 15.  The right to sue a municipality to recover damages for injuries due to a defect in a public way is created, and limited by M.G.L. c. 84, § 15.  Regan v. Atlantic Refining Company, 312 Mass. 302 (1942); Iacampo v. City of Boston, 47 Mass. App. Dec. 87 (1971); Whalen v. Worcester Electric Light Co., 307 Mass. 169 (1940).  The legislature, court or municipality cannot waive this exclusive remedy. Paddock v. Town of Brookline, 347 Mass. 230 (1964).

To prove negligence under M.G.L. ch. 84, a plaintiff must prove: (1) there was a defect on the way; (2) which the City of Boston was "obligated by law to maintain"; (3) the way was a public way; (4) the person was a traveler on the way; and (5)

18

the City of Boston had actual or constructive knowledge of the alleged defective condition.  <u>See</u> M.G.L. ch. 84, § 15.  Here, Plaintiff cannot prove the first numbered element -- that a defect existed -- and therefore, he cannot make out a prima facie case under M.G.L. ch. 84 based on his pleadings.  This Court should dismiss Count I accordingly.

As a matter of law, the absence of a curb cut, without more, does not constitute a defect under Chapter 84.  The City's alleged failure to install a curb ramp at a particular intersection cannot be read so broadly as to constitute negligence.  To be sure, the state Court has held that a "defect" in a public way includes anything in the state or condition of the way that renders it unsafe or inconvenient for ordinary travel.  <u>Gallant v. Worcester</u>, 282 Mass. 707 (1981); <u>see</u> <u>also</u>, <u>Daigneault v. Auburn</u>, 357 Mass. 612, 614 (1970). However, chapter 84 is not a strict liability statute, and the mere fact that Plaintiff incurred personal injuries does not resuscitate his chapter 84 claim.

There is nothing to support Plaintiff's contention that a missing curb ramp renders the public way at the intersection of Telegraph and Dorchester Streets unsafe for travel.  Rather, Plaintiff's own careless and negligent behavior caused his alleged injuries, as he pleads in his Complaint, he assumed the relevant intersection would have a curb ramp because the other

19

nearby intersections had ramps.  Because, as argued above, Title

II of the ADA does not require the City to retrofit existing

facilities, the City was not legally obligated to install a curb

ramp where Plaintiff fell.  It follows that there was no

negligence on the part of the City as to the absence of a curb

ramp at the relevant intersection either.  Accordingly, Count I

of Plaintiff's Complaint should be dismissed.

## VI.  CONCLUSION

For the reasons stated above, the Defendant, City of

Boston, respectfully requests that Plaintiff's Complaint be

dismissed in its entirety with prejudice.

Respectfully submitted,

DEFENDANT, CITY OF BOSTON

Merita A. Hopkins
Corporation Counsel

By its attorneys:


/s/ Kate Cook
Kate Cook   BBO# 650698
Susan Weise BBO# 545455
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4022 (Cook)
(617) 635-4040 (Weise)